Filed 9/9/24  R-Ranch Property Owners' Association v. Bullock CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Siskiyou)

----

| | |
|---|---|
| R-RANCH PROPERTY OWNERS' ASSOCIATION, | C086537 |
| Plaintiff, Cross-defendant and Respondent, | (Super. Ct. No. SCSCCVCV12132) |
| v. | |
| ART BULLOCK et al., | |
| Defendants, Cross-complainants and Appellants; | |
| RON BUCHER et al.; | |
| Cross-defendants and Respondents. | |

This appeal arises out of a January 21, 2012 recall of four members of the board of directors of the R-Ranch Property Owners' Association (Owners' Association). Appellants Art Bullock and Jim Goguen (Appellants) are two of the individuals who were

recalled in that election, and their appeal focuses primarily on two rulings made by the trial court. The first ruling disposed of Appellants' cross-claim under Corporations Code section 7616 for a determination of the validity of the election by concluding the recall was valid and replacement directors were properly appointed by the remaining board members. The second ruling awarded attorneys' fees to the Owners' Association and the replacement directors as prevailing parties against Appellants. Because Appellants have not established any error in either ruling, or any other error necessitating reversal, we will affirm the judgment.

## I. BACKGROUND

*A.    Factual Background*

R-Ranch is a 5,000-acre recreational community with open spaces and common facilities for the benefit of its members. The Owners' Association is a nonprofit mutual benefit corporation. Each member of the Owners' Association owns a share consisting of a 1/2500th undivided interest in the property that allows them the nonexclusive right and easement of enjoyment in the common areas within the properties. More than one person may own a share, but they are deemed to be one member; there is only one vote per share. R-Ranch is not a residential community. The Owners' Association is governed by a declaration of covenants, conditions, and restrictions (CC&Rs), bylaws, and relevant statutes. The CC&Rs provide that the property only can be used for ranching, grazing, hiking, camping, horseback riding, hunting, fishing, swimming, sports, or other recreational uses authorized by the Owners' Association. At the time of this dispute, camping was limited to 210 days and then the owner had to stay away for at least 30 days before camping for up to 210 days again.

The Owners' Association has a board of directors (Board) that consists of seven members of the Owners' Association elected for two-year terms, with four directors elected in even years and three in odd years. Appellants were both elected to the Board in

2

July 2011. The Board elected Bullock to be the president of the Owners' Association. In November 2011, Goguen was elected vice president.

The bylaws of the Owners' Association (Bylaws) allow for removal by recall of a director during that director's term by the affirmative vote of the members. A recall election may be initiated by presentation to the president, vice president, or secretary of the Owners' Association of a petition signed by at least five percent of the members. The petition triggers a duty on the part of the Board to call a special meeting or announce the procedures for a written ballot within 20 days. If the Board fails to act, the petitioning members may call a meeting on their own.

In early September 2011, certain R-Ranch owners initiated petitions requesting the recall of four directors—Goguen, Bullock, Brian Gallant, and Roger Gifford. At least five percent of members signed petitions that were served on these directors. The Board, however, did not call a special meeting or announce procedures for conducting a written ballot within 20 days.

The petitioning members proceeded on their own with the recall election. One of these members, Hal Glover, contracted with Lisa Davis-Schwartz of the Ballot Box to conduct the recall meeting and election as the inspector of election. Written ballots and notices of a special members meeting on January 21, 2012, to conduct a recall vote were mailed to members. The notice explained that members could return their ballots in the mail or present them at the meeting.

At the January 21, 2012 special meeting, Davis-Schwartz conducted the meeting as the inspector of election and prepared a report. (Corp. Code, § 7614, subd. (c) ["Any report or certificate made by the inspectors of election is prima facie evidence of the facts stated therein"].) Davis-Schwartz determined a quorum was present at the meeting. Of the 2,030 members in good standing constituting the total voting power, 722 were present either in person or by absentee ballot. Five-hundred seven owners voted to remove Bullock and 203 voted not to remove him. Five-hundred three owners voted to remove

3

Goguen and 205 voted not to remove. Gallant and Gifford were removed by similar margins.

On January 28, 2012, the directors remaining on the Board appointed respondents Ron Bucher, Mark Grenbemer, Timothy Caswell, and John Crosby (the Replacement Directors) to fill the vacancies created by the recalls.

B. *Procedural Background*

On January 31, 2012, the Owners' Association filed a complaint against the recalled directors for injunctive relief and appointment of a receiver. The complaint alleged causes of action for usurpation of office, interference with contractual relations, and declaratory relief. The trial court granted the Owners' Association's ex parte application for a temporary restraining order against the recalled directors prohibiting them from exercising the authority of directors or officers of the Owners' Association.

Goguen filed a cross-complaint against the Owners' Association and the Replacement Directors. His cross-complaint alleged causes of action for: (1) a determination under Corporations Code section 7616 that the recall failed and the Replacement Directors are not entitled to hold office, (2) usurpation of office, (3) intentional interference with contractual relations, and (4) negligent interference with contractual relations. On April 2, 2012, Bullock filed a cross-complaint alleging substantially the same causes of action as Goguen against the same defendants. The other recalled directors are not parties to this appeal. Later in April 2012, default was entered against Gifford and the court granted a motion to dismiss Gallant without prejudice.

Prior to Bullock's appearance in the case, the parties agreed that the court should first hear and decide Goguen's first cause of action to determine the validity of the recall action pursuant to Corporations Code section 7616. The parties subsequently agreed to hear Goguen's and Bullock's Corporations Code section 7616 challenges concurrently. The evidentiary hearing took multiple days. On January 28, 2013, the court issued a 13-

4

page decision finding that the recall election was valid.[1]  We will discuss specific portions of this decision where relevant to Appellants' arguments.  For now, we note the court summarized its ruling as follows:  "The members who conducted the recall were all owners authorized to pursue a recall of the directors without cause.  They initiated their recall with the requisite number of signatures, timely and properly served on the subject directors, proceeded to at their own expense hire an independent professional to conduct the recall election and act as an inspector of election for the written ballots.  They noticed a special members meeting and there was no dispute that the membership list utilized was one obtained from the [Owners' Association].  The notice of the special meeting and written ballots were in proper form, maintained confidentially, verified and tallied.  The recall election results were certified.  The process was open to any member who wanted to participate, and information was available to any member who wished to obtain that information.  A sufficient number of members in good standing voted to recall Jim Goguen, Art Bullock, Roger Gifford and Brian Gallant on January 21, 2012.  Pursuant to Corporations Code Section 7616, the court finds the recall election was valid.  R-Ranch is only the real property and improvements thereon owned jointly by its owners, as undivided tenants in common, who have agreed to be managed by the [Owners' Association], a nonprofit mutual benefit corporation.  This case represents the most disparate views of how R-Ranch should be governed."

On October 11, 2017, the trial court granted the Owners' Association's and Replacement Directors' motions for judgment on the pleadings as to both cross-complaints.  The court concluded that its determination that the recall election and appointment of the Replacement Directors was valid precluded Appellants' other causes

---

[1]  We dismissed an appeal from this order as violating the one final judgment rule.  (*R-Ranch Property Owners Association v. Bullock* (Nov. 28, 2016, C073461) [nonpub. opn.].  We explained the order is not an injunction and therefore not appealable as such.

of action for usurpation of office, intentional interference with contractual relations, and negligent interference with contractual relations from stating a claim as a matter of law. The trial court entered judgment against Appellants on December 4, 2017. Appellants filed a timely appeal.[2]

The trial court subsequently awarded $320,654 in attorneys' fees to the Owners' Association and $327,796.50 to the Replacement Directors.

## II. DISCUSSION

### A. *Standards for Appellate Briefs*

We begin with a few words regarding appellate briefing. These rules of appellate procedure apply to Appellants even though they are ostensibly representing themselves on appeal.[3] (*McComber v. Wells* (1999) 72 Cal.App.4th 512, 523.)

Orders and judgments are presumed to be correct, and the appellant must affirmatively show error. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) "To demonstrate error, appellant must present meaningful legal analysis supported by citations to authority and citations to facts in the record that support the claim of error. [Citations.] When a point is asserted without argument and authority for the proposition, 'it is deemed to be without foundation and requires no discussion by the reviewing court.' [Citations.] Hence, conclusory claims of error will fail." (*In re S.C.* (2006) 138 Cal.App.4th 396, 408.) With respect to citations to the record, the appellant must "[s]upport any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears." (Cal. Rules of Court, rule 8.204(a)(1)(C).) As the reviewing court, we will not perform an independent, unassisted review of the record in search of error or grounds to support the judgment. (*McComber v.*

---

[2] The reply briefs were not filed in this case until January 29, 2024. The parties continued to file and respond to motions after that point.

[3] Appellants admit they have "their own advising attorneys."

6

*Wells, supra*, 72 Cal.App.4th at p. 522.) That relevant record citations may have been provided elsewhere in the brief, such as in the factual background, does not cure a failure to support specific legal arguments with citations to the record. (*City of Lincoln v. Barringer* (2002) 102 Cal.App.4th 1211, 1239, fn. 16.) This is particularly so in this appeal where Appellants have submitted hundreds of pages of briefing. Furthermore, any arguments raised or only supported by authority on reply have been waived. (*People v. Baniqued* (2000) 85 Cal.App.4th 13, 29.)

In addition, the appellant must "[s]tate each point under a separate heading or subheading summarizing the point." (Cal. Rules of Court, rule 8.204(a)(1)(B).) "This is not a mere technical requirement." (*In re S.C., supra*, 138 Cal.App.4th at p. 408.) It is designed so that we may be advised " 'of the exact question under consideration, instead of being compelled to extricate it from the mass.' " (*Ibid.*) "Failure to provide proper headings forfeits issues that may be discussed in the brief but are not clearly identified by a heading." (*Pizarro v. Reynoso* (2017) 10 Cal.App.5th 172, 179.) Appellants' arguments "echo each other under their different headings in contravention of the requirements for focused briefing." (*Smith v. City of Napa* (2004) 120 Cal.App.4th 194, 202.) Appellants' briefs are also difficult to decipher. As such, "[w]e address [their] claims as best we can discern them." (*County of Sacramento v. Singh* (2021) 65 Cal.App.5th 858, 861.) Further, we will address only those arguments that were not forfeited under the standards we have laid out.

B.     *Respondents' Briefs*

Two respondent's briefs have been filed in this appeal. Appellants challenge the propriety of both.

*1. Owners' Association's Brief*

One respondent's brief was filed on behalf of the Owners' Association. On November 29, 2023, Appellants filed a motion that requested we strike this brief and dismiss the Owners' Association as a non-party to this appeal. On December 13, 2023, this court deferred decision pending calendaring and assignment of the panel. We now deny this motion and address the overlapping argument Appellants made in their opening brief.

Appellants argue the Owners' Association lacks standing to appear in this appeal because they "cannot represent the corporate interests in this dispute." They cite authority indicating that in a case where "the issue is whether plaintiff or defendants rightfully control the corporation," the corporation is not a necessary party to the action. (*American Center for Education, Inc. v. Cavnar* (1972) 26 Cal.App.3d 26, 37.) The plaintiff in that case had been on the board of directors with three other individuals. (*Id*. at p. 28.) When one resigned, the two others (who were both named as defendants) voted to remove the plaintiff and appointed the third defendant to fulfill his term. (*Ibid*.) The court found "[u]nder these circumstances the corporation is not in a position to represent its position in court, for the very purpose of the action is to determine who speaks for the corporation. Thus any appearance by the corporation is indeed . . . pro forma, and we conclude that the issues raised by the individual parties on appeal may be disposed of without the appearance of the corporation in this court." (*Id*. at p. 37.) Here, the propriety of the Owners' Association's action is not before us because it dismissed its complaint. We are addressing the trial court's ruling on Appellants' causes of action under Corporations Code section 7616. The Owners' Association's complaint did not seek a determination of the validity of the election under Corporations Code section 7616. The statute provides that a copy of the complaint must be served upon the corporation. (Corp. Code, § 7616, subd. (c).) Even if the corporation is not a necessary defendant to such an action, Appellants cite no authority indicating that where they have

8

named the corporation as a defendant, a corporation is prohibited from defending the action on the merits. Nor would that appear appropriate here. This case is not a dispute between two rival factions of a board who have all been named as parties to the lawsuit. The cross-complaint challenged the validity of Appellants' recall by hundreds of members of the Owners' Association in an election that had been certified by an independent inspector of election. (Corp. Code, § 7614, subd. (c).) The only defendants Appellants named other than the Owners' Association were the individuals who were nominated to replace them after their recall. The directors who remained on the Board because they were not subjects of the recall were not named as defendants, nor were any other members. Appellants simply did not frame their dispute as one between rival factions but rather as one challenging their recall. Under these circumstances, the association that represents the many members who voted to recall Appellants would seem an appropriate defendant. Moreover, having been awarded their attorneys' fees for prevailing in this action, the Owners' Association is a proper party on appeal to contest a challenge to this award. We reject Appellants' assertions that the Owners' Association has no role in this appeal.

2. *Respondent's Brief Filed by Bartley Fleharty*

Another respondent's brief was filed by Bartley Fleharty from the Law Office of Bart Fleharty on behalf of "Cross-defendant and Respondent Ron Bucher et al." on September 5, 2023. Fleharty had previously filed documents on behalf of all of the Replacement Directors as a member of the law firm Wells, Small, Fleharty & Weil. On November 27, 2023, Appellants filed a motion to strike this respondent's brief based on the assertion Bucher died "years ago" and is no longer represented by Fleharty. The motion argued this respondent's brief should be stricken for: (1) violating California Rules of Court, rule 8.204(b)(10)(D) by not naming the party represented by the attorney and violating California Rules of Court, rule 8.208(d)(3) by failing to file a certificate of interested entities or persons; (2) failing to file a notice of substitution under California

9

Rules of Court, rule 8.36 signed by the represented party in this court; and (3) violating California Rules of Court, rule 8.32(c) by having multiple email addresses as Fleharty's contact information.[4]  The balance of the motion responds to arguments raised in the respondent's brief.  Also on November 27, 2023, Appellants filed a motion to vacate this court's September 19, 2023 order which set a deadline of November 27, 2023, to file a reply brief and indicated further extensions would require an exceptional showing of good cause.  In particular, Appellants argued not all of the Replacement Directors had filed a respondent's brief and this court failed to notify them of their failure to do so.

On December 11, 2023, Fleharty filed a declaration in response to the motion to strike the respondent's brief he filed.  Appellants have objected to this declaration on the grounds that it was not made "under penalty of perjury."  We sustain the objection and do not consider Fleharty's declaration.  (*Kulshrestha v. First Union Commercial Corp.* (2004) 33 Cal.4th 601, 609-610.)  On December 12, 2023, Fleharty filed a substitution of attorney that was dated December 2022.  In this document, Grenbemer and Crosby consented to the substitution of Bart Fleharty from the Law Office of Bart Fleharty as their representative in place of Bartley Fleharty from Wells, Small, Fleharty & Weil.  The consent makes no mention of Caswell or Bucher.

On December 13, 2023, this court issued an order denying the motion to vacate the court's September 19, 2023 order and deferring decision on the motions to strike the respondents' briefs pending calendaring and assignment of the panel.  This order was mailed to Fleharty at the address for Wells, Small, Fleharty & Weil.  On the same date, this court issued an order extending the deadline to file the reply briefs to January 29, 2024.  This order was mailed to Fleharty at the address for the Law Office of Bart Fleharty.

---

[4]  This is no longer the case.

On January 22, 2024, Appellants filed a new motion criticizing this court's decision to defer its rulings until after the deadline for filing a reply brief and arguing we should issue 15-day notices under California Rules of Court, rule 8.220(a)(2) regarding Caswell's and Bucher's failure to file respondent's briefs and vacate the deadline for filing a reply brief. This court deferred decision on this motion pending calendaring and assignment of the panel as well.

We now deny these outstanding motions. The record indicates, and Appellants do not demonstrate otherwise, that Fleharty was counsel of record for the Replacement Directors before and after he filed a respondent's brief in this matter. Under these circumstances, courts have rejected challenges based on a failure to file a formal substitution. (*Crocker National Bank v. O'Donnell* (1981) 115 Cal.App.3d 264, 268.) Additionally, "[w]here the actual authority of the new or different attorney appears, courts regularly excuse the absence of record of a formal substitution and validate the attorney's acts, particularly where the adverse party has not been misled or otherwise prejudiced." (*Baker v. Boxx* (1991) 226 Cal.App.3d 1303, 1309.) Where a respondent fails to file a respondent's brief after receiving a 15-day notice, this court may decide the appeal on the record, the opening brief, and any oral argument by the appellant. (See Cal. Rules of Court, rule 8.220(a)(2).) Here, the court did not provide notification that Caswell or Bucher may have failed to file a respondent's brief, but it does not appear there could be any prejudice to any party for not doing so. If we attempted to provide this notice now as suggested by Appellants, the result would not change. We will decide the matter on the briefing of the other parties just as we would if we officially sanctioned a respondent for failing to file a brief. And because our decision is to affirm the trial court's rulings, the filing of any additional respondent's brief would not change the outcome of this proceeding. Likewise, we see no value in ordering Fleharty to correct the respondent's brief he filed to reflect the parties he represents. (See Cal. Rules of Court, rule 8.204(e)(2)(C) [we may disregard noncomplying briefs].) The record is clear at this

point that the certificate of interested entities or persons included in the respondent's brief and the respondent's brief filed by Fleharty were filed on behalf of Grenbemer and Crosby, whom the record indicates he does represent. Fleharty's prior law firm, if it still exists, has received some level of notice of these proceedings and we have received no indication that they disagree with Fleharty's continued representation of his clients in this proceeding. In these unusual circumstances, it is not in the interest of justice that the resolution of this case be delayed further when there is no indication that separate briefs would be submitted on behalf of Caswell or Bucher and further briefing would not change the outcome of these proceedings. To the extent Appellants argue Fleharty's actions violated Business & Professions Code section 6068, subdivision (d) by seeking to mislead this court with a false statement, given the limited record before us, it is not clear that Fleharty did so. The balance of Appellants' arguments lack merit and do not establish grounds for striking a respondent's brief. Having denied the outstanding motions in this appeal, we now turn to the remaining issues raised by the parties.

## C. *Alleged Mootness*

The Owners' Association, Grenbemer, and Crosby argue the appeals should be dismissed as moot because the terms to which Appellants were elected have already expired and new directors have been elected. This argument is unavailing because it fails to address the trial court's award of attorneys' fees. "[I]f the appeal of the order on fees is not subject to dismissal, neither is the appeal of the judgment on which the fees award rests." (*Center for Biological Diversity v. County of San Bernardino* (2010) 185 Cal.App.4th 866, 881; see also *Save Our Residential Environment v. City of West Hollywood* (1992) 9 Cal.App.4th 1745, 1750-1751 ["Even if this appeal were otherwise moot as a result of the City's actual compliance with the writ's mandate, the trial court's award of attorney fees . . . would preclude us from dismissing the appeal"].) As such, we will turn to the merits of Appellants' claims.

*D.    Judgment*

Appellants note the judgment entered in this case stated that "[o]n October 27, 2017, the [Owners' Association] dismissed its Complaint without prejudice thereby disposing of the last remaining unresolved causes of action in the case," but the record suggests that the clerk's office rejected the Owners' Association's request for dismissal on the basis that judgment was already entered on the complaint on October 11, 2017. Appellants contend this is error but cite no authority suggesting this forms any basis for reversal or requires any correction at this point. It does not. At best, Appellants have identified that the clerk failed to grant a request for dismissal. But the clerk's duty to enter the dismissal is ministerial. (*Egly v. Superior Court* (1970) 6 Cal.App.3d 476, 479; 6 Witkin, Cal. Proc. (6th ed. 2021) Proceedings Without Trial § 353, p. 851.) Where a dismissal is in proper form, it is effective immediately even if the clerk refuses to enter it. (*Rosen v. Robert P. Warmington Co*. (1988) 201 Cal.App.3d 939, 943; *Egly, supra*, at pp. 479-480.)

*E.    The Trial Court's Determination of the Validity of Recall Election*

Appellants raise various challenges to the trial court's order determining, pursuant to Corporations Code section 7616, that the January 21, 2012 recall election and appointment of the Replacement Directors was valid.[5] This statute permits any "director," "member" or "person who had the right to vote" in a nonprofit corporation's election to bring an action to determine the validity of an election or appointment of a director.[6] (Corp. Code, § 7616, subd. (a).) The court "may determine the person entitled

---

[5] Appellants filed separate briefs raising different legal issues but adopted each other's arguments. (See Cal. Rules of Court, rule 8.200(a)(5) ["Instead of filing a brief, or as part of its brief, a party may join in or adopt by reference all or part of a brief in the same or a related appeal"].)

[6] "Upon the filing of the complaint, and before any further proceedings are had, the court shall enter an order fixing a date for the hearing, which shall be within five days unless

13

to the office of director or may order a new election to be held or appointment to be made, may determine the validity, effectiveness and construction of voting agreements and voting trusts, the validity of the issuance of memberships and the right of persons to vote and may direct such other relief as may be just and proper." (*Id*., subd. (d).)

To the extent Appellants' contentions challenge the trial court's application of the CC&Rs, bylaws, and statutes to essentially undisputed facts, they are subject to our de novo review. (*Lake Lindero Homeowners Assn., Inc. v. Barone* (2023) 89 Cal.App.5th 834, 844.) "Likewise, insofar as the contentions concern the trial court's construction of the [Owners'] Association's [CC&Rs,] bylaws and our state's governing statutes, these issues too are subject to our de novo review." (*Ibid*.) "Our review of documents in the case is independent as well, provided no conflicting extrinsic evidence on the meaning of the documents was presented to the trial court." (*Committee to Save the Beverly Highlands Homes Ass'n v. Beverly Highlands Homes Ass'n* (2001) 92 Cal.App.4th 1247, 1261.) "We must uphold any factual determination of the trial court, express or implied, so long as there is substantial evidence in the record to support it." (*Singh v. Singh* (2004) 114 Cal.App.4th 1264, 1293.) We consider only the evidence and documents that were before the court at the time of its ruling. (*Sacramento Area Flood Control Agency v. Dhaliwal* (2015) 236 Cal.App.4th 1315, 1328, fn. 5.)

1.     *Applicability of the Davis-Stirling Common Interest Development Act*

Appellants raise various arguments that assert their removal did not comply with various provisions of the Davis-Stirling Common Interest Development Act (the Davis-Stirling Act or the Act) (Civ. Code, § 4000 et seq.), particularly former Civil Code section

---

for good cause shown a later date is fixed." (Corp. Code, § 7616, subd. (c).) Appellants argue but fail to demonstrate with sufficient authority and supporting references to the record that the court erred in not ruling sooner.

1363.03 regarding procedural rules for elections.[7]  Whether the Act applies to the Owners' Association is a nuanced question.

"The Davis-Stirling Act, enacted in 1985 (Stats. 1985, ch. 874, § 14, pp. 2774-2786), consolidated the statutory law governing condominiums and other common interest developments." (*Villa De Las Palmas Homeowners Assn. v. Terifaj* (2004) 33 Cal.4th 73, 81.)  The Act "applies and a common interest development is created whenever a *separate interest* coupled with an interest in the common area or membership in the association is, or has been, conveyed." (Civ. Code, § 4200, italics added; see also former Civ. Code, § 1352.)  "In a planned development, 'separate interest' means a separately owned lot, parcel, area, or space." (Civ. Code, § 4185, subd. (a)(3); see also former Civ. Code, § 1351, subd. (*l*)(3).)[8]  The trial court noted that "[h]istorically there has been an ongoing disagreement amongst R-Ranch owners on whether Davis-Stirling applies at all."  The court concluded the Act "would not apply as a matter of law" to R-Ranch and the Owners' Association given the lack of any separate interests.  As the court found, "There are no separate interests in R-Ranch.  Members do not have permanent residency rights at R-Ranch.  The properties are used solely for ranching, grazing, hiking, camping, horseback riding, hunting, fishing, swimming, sports and other recreational uses authorized by the [Owners' Association]."  Appellants have failed to demonstrate any error in this conclusion.  Nonetheless, the trial court explained that members adopted specific statutory provisions of the Act in their governing documents.  They did not,

---

[7]  This Act was reorganized effective January 1, 2014.  (Stats. 2012, ch. 180, §§ 2-3.)  Unless otherwise noted, we cite the relevant provisions where they are currently codified.

[8]  "In a stock cooperative, 'separate interest' means the exclusive right to occupy a portion of the real property, as specified in [Civil Code] Section 4190." (Civ. Code, § 4185, subd. (a)(4); see also former Civ. Code, § 1351, subd. (*l*)(4).)  Here, each owner has a "nonexclusive right and easement of enjoyment in and to the Common Areas."

15

however, adopt the entirety of the Act.  We agree with this interpretation of the governing documents.

The CC&R's and Bylaws are interpreted according to the usual canons for interpreting written instruments.  (*14859 Moorpark Homeowner's Assn. v. VRT Corp.* (1998) 63 Cal.App.4th 1396, 1410; *Ticor Title Ins. Co. v. Rancho Santa Fe Assn.* (1986) 177 Cal.App.3d 726, 730.)

"The fundamental canon of interpreting written instruments is the ascertainment of the intent of the parties.  [Citations.]  As a rule, the language of an instrument must govern its interpretation if the language is clear and explicit.  [Citations.]  A court must view the language in light of the instrument as a whole and not use a 'disjointed, single-paragraph, strict construction approach' [citation].  If possible, the court should give effect to every provision.  [Citations.]  An interpretation which renders part of the instrument to be surplusage should be avoided.  [Citations. ¶]  When an instrument is susceptible to two interpretations, the court should give the construction that will make the instrument lawful, operative, definite, reasonable and capable of being carried into effect and avoid an interpretation which will make the instrument extraordinary, harsh, unjust, inequitable or which would result in absurdity.  [Citation.]  If a general and a specific provision are inconsistent, the specific provision controls."  (*Ticor Title Ins. Co. v. Rancho Santa Fe Assn., supra*, 177 Cal.App.3d at p. 730.)

We agree with the trial court that the provisions of the governing documents identified by Appellants do not make all of the Act applicable to the Owners' Association.  For instance, the CC&Rs state:  " 'Association' means R-Ranch Property Owners Association, a California nonprofit corporation (formed pursuant to the Nonprofit Corporation Law of the State of California), its successors and assigns.  The Association is an 'Association' as defined in [former] California Civil Code section 1351(a)."  Former Civil Code section 1351, subdivision (a) (current Civil Code section 4080), in turn provides that an " 'Association' means a nonprofit corporation or unincorporated

association created for the purpose of managing a common interest development." Reading the CC&Rs together with the statute does not make R-Ranch itself a common interest development or adopt the entirety of the Act. We do agree with the trial court's conclusion that that governing documents, as evinced by this definition of "Association" in the CC&Rs, incorporate portions of the Act. For instance, section 7.1 of the Bylaws states, "Subject to the provisions of the California Nonprofit Corporation Law, the Davis-Stirling Common Interest Development Act . . . and any limitations in any of the Governing Documents relating to action required to be approved by the Members, the business and affairs of the Association shall be vested in and exercised by the Association's Board of Directors." That is not an adoption for all purposes. In contrast, section 14.7 of the Bylaws provides: "Unless the context requires otherwise or a term is specifically defined herein, the general provisions, rules of construction, and definitions in the California Nonprofit Mutual Benefit Corporation Law shall govern the construction of these Bylaws." Nowhere do any of the governing documents provide that all of the Act shall govern their construction or apply to the Owners' Association. Importantly, the Bylaws sets forth its own procedures for elections and removal of directors. Interpreting the governing documents as a whole, we read them as intending to apply these provisions to recall elections and not specific statutory provisions of the Act that were not incorporated by reference. Accordingly, we reject Appellants' arguments that rely on portions of the Act, such as former Civil Code section 1363.03, that are not among those adopted through the governing documents.

### 2. *Collateral Estoppel*

Appellants argue on appeal that collateral estoppel prevents the relitigating of this question among others. The trial court's ruling does not discuss this doctrine. Rather, the ruling explains Appellants argued that the Owners' Association should be precluded from arguing the Act does not apply because it had taken a contrary position in other cases. Appellants also argued that some of the cases now cited in Appellants' collateral estoppel

17

argument were precedential authority. The trial court explained that it did not take judicial notice of unpublished appellate court cases or findings of other superior court cases that were not relevant to the proceedings and there was no binding legal precedent on the issue of whether the Act applies to a recall election. (See, e.g., *Watts v. Civil Service Bd.* (1997) 59 Cal.App.4th 939, 949-950 [unpublished decision may not be used as authority]; Cal. Rules of Court, rule 8.1115(a)-(b).) We agree with this conclusion.

" '[C]ollateral estoppel must be proved [in the trial court] or it is waived.' " (*Franklin Mint Co. v. Manatt, Phelps & Phillips, LLP* (2010) 184 Cal.App.4th 313, 332.) It does not appear that this issue was adequately raised in the trial court before the court's ruling on the validity of the recall election. As such, we conclude this issue has been forfeited.

Even if we were to find it was not forfeited, we would conclude Appellants have not fulfilled their burden to prove collateral estoppel applies to the question of whether R-Ranch is a common interest development under the Act.

Our Supreme Court has "frequently used 'res judicata' as an umbrella term encompassing both claim preclusion and issue preclusion, which [it] described as two separate 'aspects' of an overarching doctrine." (*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 823 (*DKN Holdings*).) The primary aspect is now referred to as "claim preclusion" rather than "res judicata." (*Id*. at p. 824; *Samara v. Matar* (2018) 5 Cal.5th 322, 326.) The secondary aspect is now referred to as "issue preclusion" rather than "direct or collateral estoppel." (*DKN Holdings, supra*, at p. 824; *Samara v. Matar, supra*, at p. 326.) "Issue preclusion prohibits the relitigation of issues argued and decided in a previous case, even if the second suit raises different causes of action. [Citation.] Under issue preclusion, the prior judgment conclusively resolves an issue actually litigated and determined in the first action." (*DKN Holdings, supra*, 61 Cal.4th at p. 824, emphasis removed.) It differs from claim preclusion in that it "does not bar entire causes of action" but "prevents relitigation of previously decided issues." (*Ibid*.) The doctrine applies

"(1) after final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who was a party in the first suit or one in privity with that party." (*Id*. at p. 825.) "And while these threshold requirements are necessary, they are not always sufficient: 'Even if the[ ] threshold requirements are satisfied, the doctrine will not be applied if such application would not serve its underlying fundamental principles' of promoting efficiency while ensuring fairness to the parties. [Citations.] It is the burden of the party seeking to prevent relitigation based on prior findings to raise the defense and establish its elements." (*People v. Strong* (2022) 13 Cal.5th 698, 716.) Appellants have failed to meet their burden.

"For purposes of collateral estoppel, an issue was actually litigated in a prior proceeding if it was properly raised, submitted for determination, and determined in that proceeding. [Citation.] In considering whether these criteria have been met, courts look carefully at the entire record from the prior proceeding, including the pleadings, the evidence, the jury instructions, and any special jury findings or verdicts." (*Hernandez v. City of Pomona* (2009) 46 Cal.4th 501, 511; accord *People v. Curiel* (2023) 15 Cal.5th 433, 452.) The record Appellants have produced of these earlier proceedings is sparse.

Appellants rely on this court's 1996 unpublished decision in *R-Ranch Property Owners Association v. Lemke* (Aug. 28, 1996, C020577) [nonpub. opn.]. That opinion, however, avoids answering whether R-Ranch is a common interest development. It also set forth facts that would preclude that possibility, stating that "no owner has the exclusive right of ownership or possession of any portion of R-Ranch." Appellants' argument is based on that opinion's later rejection of the notion that a resolution could not be enforced as an equitable servitude. In rejecting this argument, this court cited former Civil Code section 1354 and *Nahrstedt v. Lakeside Village Condominium Assn.* (1994) 8 Cal.4th 361, 378 and held the CC&Rs are enforceable as equitable servitudes. *Nahrstedt* explained that former Civil Code section 1354, subdivision (a) stated, in relevant part: "The covenants and restrictions in the declaration shall be enforceable

equitable servitudes, unless reasonable, and shall inure to the benefit of and bind all owners of separate interests in the development." (See *Nahrstedt, supra,* at p. 378.) The CC&Rs make express reference to former Civil Code section 1354 and the *Lemke* opinion did not explain the basis for this court's implicit conclusion this statute applied. Thus, we cannot conclude Appellants proved this court previously decided *all* of the Act applied to R-Ranch because it was a common interest development. As such, we cannot conclude issue preclusion applies.

Appellants cite a 2009 tentative decision issued in trial court proceedings in *Weber v. R-Ranch Property Owners Association, Inc*. (Superior Court of Siskiyou, case No. SCSCCVCV 08-001618). The record does not demonstrate this tentative decision was ever adopted by the trial court. The judgment did state that the court "finds that the Association's Bylaws require the affirmative vote of a majority of the voting power in order for an elected director to be recalled or removed." Significantly, this provision of the Bylaws was amended in 2010. As such, it cannot collaterally estop on that point. (See *People v. Strong, supra*, 13 Cal.5th at p. 716 ["preclusion does not apply when there has been a significant change in the law since the factual findings were rendered that warrants reexamination of the issue"].)

Appellants also cite a 2009 decision in an arbitration between the Owners' Association and Goguen. The opinion states the first issue presented was whether a horse boarding fee of $100 a month for R-Ranch owners' horses violated the Act and the CC&Rs. The opinion then stated R-Ranch is "organized as a common interest development and subject to the provisions of the Davis-Stirling Act. As such, it must comply with the provisions of [former] Civil Code section 1366.1," which prohibited an association from imposing or collecting a fee that exceeded the amounts necessary to defray the costs for which it is levied. On this limited record, it is not clear the arbitrator's statements regarding R-Ranch being a common interest development were based on an issue that was actually litigated. The trial court here explained that the

20

members adopted Civil Code section 1366.1 in the governing documents. Even if we could conclude Appellants produced enough evidence and authority to demonstrate the threshold requirements for applying collateral estoppel were met, we would be prevented by issues of fairness from applying the doctrine based on this record. The trial court found, "There are members/owners who have strong opinions that Davis-Stirling does not apply at all, and members/owners who have equally strong opinions that it does apply. Depending on the constitution of the board, there will be an inherent contradiction of how the [Owners' Association] will be run." The record does not suggest that the arbitration proceeding allowed members with contradictory views to adequately adjudicate this issue. Under these circumstances, we cannot apply collateral estoppel to reverse the sound conclusion of the trial court that R-Ranch is not actually a common interest development even though some of the Act applies to it.

### 3. Judicial Estoppel

Appellants contend judicial estoppel also prevented the relitigation of the question of whether R-Ranch is a common interest development.

" ' "Judicial estoppel precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position. [Citations.] The doctrine's dual goals are to maintain the integrity of the judicial system and to protect parties from opponents' unfair strategies. [Citation.] Application of the doctrine is discretionary." ' [Citation.] The doctrine applies when '(1) the same party has taken two positions; (2) the positions were taken in judicial or quasi-judicial administrative proceedings; (3) the party was successful in asserting the first position (i.e., the tribunal adopted the position or accepted it as true); (4) the two positions are totally inconsistent; and (5) the first position was not taken as a result of ignorance, fraud, or mistake.' " (*Aguilar v. Lerner* (2004) 32 Cal.4th 975, 986-987.) Appellants reference these criteria but do not adequately support their assertion that each criteria are met with analysis and record citations. For instance, as to the first element, Appellants do not cite

21

anywhere in the record where the Owners' Association took a position on whether R-Ranch is a common interest development or otherwise subject to the Act for all purposes. Additionally, judicial estoppel is an equitable doctrine, and its application, even when all of its elements are met, is discretionary. (*People v. Castillo* (2010) 49 Cal.4th 145, 156.) Appellants have not demonstrated the doctrine should apply here.

4. *Rule of Property*

Appellants argue the rule of property prevents the religitation of the question of whether R-Ranch is a common interest development. A rule of property is " '[a] settled rule or principle, resting usually on precedents or a course of decisions, regulating the ownership or devolution of property. [Citations.] The principle appears to be an extension of the '*stare decisis*' rule, which it is said 'seems to apply with peculiar force and strictness to decisions which have determined questions respecting real property and vested rights, although it embraces as well those matters of general commercial importance which tend to influence future business transactions. It has often been held that decisions long acquiesced in, which constitute rules of property or trade or upon which important rights are based, should not be disturbed, even though a different conclusion might have been reached if the question presented were an open one, inasmuch as uniformity and certainty in rules of property are often more important and desirable than technical correctness. Thus, judicial decisions affecting the business interests of the country should not be disturbed except for the most cogent reasons, as where the evils of the principle laid down will be more injurious to the community than can possibly result from a change, or upon the clearest grounds of error.' . . . The same principle is applied in California to avoid injustice which would result from the overruling of a judicial decision upon which parties have relied in investing money or acquiring property interests." (*Abbott v. City of Los Angeles* (1958) 50 Cal.2d 438, 456-457.) As in *Abbott*, we cannot conclude the rule applies because "there appear to be neither guiding judicial decisions nor reliance thereon." (*Id.* at p. 457.)

5. *Amendment of Section 7.6(d) of the Bylaws*

As amended in 2010, section 7.6(d) of the Bylaws provides that "a director may be removed from office prior to expiration of his or her term only by the affirmative vote of the members." Previously, it provided that "a director may be removed from office prior to the expiration of his or her term only by the affirmative vote of a majority of the voting power of the Members." Appellants argue the board lacked authority to amend this provision. As relevant here, section 14.4.2 of the Bylaws provides that the Board may amend the Bylaws when it "is needed to conform a particular provision or provisions of the Bylaws to changes in applicable California State statutory law which are nondiscretionary in nature." The Board must receive a written opinion from counsel confirming that the change in law necessitates an amendment before doing so. Otherwise, the Bylaws may be amended only by the affirmative vote of a majority of the owners entitled to vote. Appellants argue the earlier version of the Bylaws did not conflict with any relevant law. This is incorrect. "[Corporations Code] section 7151, subdivision (e) expressly prohibits a nonprofit mutual benefit corporation with 50 or more members (like the Association) from requiring a greater proportion of votes than is specified in section 7222, subdivision (a)(2) for the removal of a director." (*Lake Lindero Homeowners Assn., Inc. v. Barone, supra*, 89 Cal.App.5th at p. 846.) Further, Corporations Code section 7222, subdivision (a)(2) requires only "approv[al] by the members," which is satisfied " 'by the affirmative vote of a majority of the votes represented and voting at a duly held meeting at which a quorum is present.' " (*Lake Lindero, supra*, at p. 846.) As such, the Board had the authority to amend the Bylaws and received the required opinion authorizing them to do so. We reject Appellants' assertion that the Bylaws required the opinion to include citations or more specificity than it did. The 2010 amendment of section 7.6(d) of the Bylaws was lawful. Further, even it was not, we could not apply the former provision of the Bylaws to invalidate the recall election because it conflicts with the law. (*Lake Lindero, supra*, at p. 846.)

23

6. *Validity of Petition for Recall*

Under section 7.6(d) of the Bylaws, a recall requires that a petition be mailed to the president, vice president, or secretary of the Owners' Association and carry the signatures of members in good standing who represent at least five percent of the voting power of the membership. The petition must set forth "the reason(s) the petitioners are seeking the director's removal." Appellants argue the recall was void because no valid petition was filed pursuant to these provisions. We disagree. Each recall petition stated the name of the owner in good standing, share number, that the signing member supported the recall of the specified board member, and the reasons therefor. The Bylaws do not require, as Appellants suggest, a request for a meeting. Appellants appear to contend that because the recall petition was misspelled "recall pitition," it was not a petition for a recall. We are unpersuaded. The meaning of the documents was clear. Appellants citation to authorities explaining, with respect to statutes, "[t]itle or chapter headings are unofficial and do not alter the explicit scope, meaning, or intent of a statute" are inapplicable. (*DaFonte v. Up-Right, Inc*. (1992) 2 Cal.4th 593, 602.) In construing a written instrument, we consider subject matter headings. (*Myers Building Industries, Ltd. v. Interface Technology* (1993) 13 Cal.App.4th 949, 974.) Here, the title was part of the document signed by the members. We reject Appellants' assertion that the recall was void for lack of a valid petition.

7. *Mailing of Ballots*

Appellants argue Corporations Code section 7513 and section 7.6(d)(ii) of the Bylaws required the Owners' Association to send ballots. Corporations Code section 7513 explains that, unless otherwise prohibited, "any action which may be taken at any regular or special meeting of members may be taken without a meeting if the corporation distributes a written ballot to every member entitled to vote on the matter." (Corp. Code, § 7513, subd. (a).) Section 7.6(d)(ii) of the Bylaws provides that within 20 days of receiving a petition for removal of a director, "the Board shall either call a special

24

meeting or announce the procedures for conducting a written ballot of the members to vote upon the requested recall. . . . If the board fails to set a date for . . . such meeting or written ballot within 20 days, the members initiating the petition may call such meeting on their own initiative without Board approval or sanction." Appellants argue the fact that Section 7.6(d)(ii) of the Bylaws does not specify that members can announce procedures for conducting a written ballot means that members only had the power to call a meeting and not to distribute ballots. The trial court concluded, and we agree, that "[t]o give effect to and implicit in Section 7.6 is that the members can conduct a recall election when the board fails to act." Otherwise, calling a meeting would serve no purpose. Further, reading section 7.6(d)(ii) of the Bylaws in conjunction with Corporations Code section 7513 demonstrates that members are authorized to conduct a recall on their own where the Board does not, but members, unlike the Board, must convene a meeting when they do so. Having called a meeting as required, we cannot conclude the election can be invalided because it involved the distribution of written ballots. Indeed, other provisions suggest there must be written ballots.

### 8. *Rebuttal of Charges*

Appellants argue the recall was void because they were denied the right to rebut charges in writing and have those charges included in the ballot as required by section 7.6(d)(iii) of the Bylaws. This provision provides: "The director whose removal is being sought shall have the right to rebut the allegations contained in the petition orally, in writing, or both. If the rebuttal is in writing, it shall by mailed by the Association or otherwise provided to all members, together with the recall ballot." The trial court found that "[t]he directors subject to the recall received timely notice in September 2011. There was no evidence that they were prevented from submitting written rebuttals including having materials included in the recall group's newsletter or website. The recalled directors had time and opportunity to submit written rebuttals. They received the same mailings from the recall that all members/owners received, and which contained contact

25

information and return addresses on the mailings. The fact is they did not submit any written rebuttal materials because they had already taken the position that the recall was not valid and they chose to ignore the recall effort." Appellants have not effectively responded to these findings. They cite no evidence that they did not receive timely notice that the recall was occurring. The Bylaws provide that Appellants had the right to submit a rebuttal; they did not require that Appellants be informed that they could submit a written rebuttal or that they be asked for one.

> 9. *Authority to Call Meeting*

Appellants argue the recall was void for failure to call a properly requested owners' meeting as required by section 5.3(b) of the Bylaws and Corporations Code sections 7510, subdivision (e), and 7511, subdivision (c). Corporations Code section 7510, subdivision (e) states: "Special meetings of members for any lawful purpose may be called by the board, the chairperson of the board, the president, or such other persons, if any, as are specified in the bylaws. In addition, special meetings of members for any lawful purpose may be called by 5 percent or more of the members." Corporations Code section 7511, subdivision (c) provides: "Upon request in writing to the corporation addressed to the attention of the chairperson of the board, president, vice president, or secretary by any person (other than the board) entitled to call a special meeting of members, the officer forthwith shall cause notice to be given to the members entitled to vote that a meeting will be held at a time fixed by the board not less than 35 nor more than 90 days after the receipt of the request." Section 5.3(b) of the Bylaws explains that "[i]f a special meeting is called by Members other than the Board of Directors or President, the request shall be submitted by such Members in writing, specifying the general nature of the business proposed to be transacted, and shall be delivered . . . to the President, any Vice President, or the Secretary of the Association." Appellants argue the recall was void because the members did not request a special meeting. As the trial court explained, section 5.3 of the Bylaws and Corporations Code sections 7510 and 7511 set

forth the general rules regarding when members may call for a special meeting, but section 7.6(d) of the Bylaws is a specific provision that covers the authority of members to remove directors without cause. Notably, they effectively achieve the same result. As relevant here, within 20 days of receiving a recall petition signed by at least five percent of the voting power of the membership, the Board must call a special meeting and give notice thereof or announce the procedures for conducting a written ballot. If they do not, the members initiating the petition may call a meeting on their own without Board approval. We reject Appellants' assertion that a separate written meeting request was required.

10. *Inspector of Election*

Appellants raise various issues related to the appointment of the inspector of election. The trial court found that the owners who were actively assisting with the recall effort asked for bids from three providers to conduct the recall election and selected the Ballot Box as the lowest bidder. A contract was signed between Davis-Schwartz of the Ballot Box and one member of the recall group, Glover. The members who attended the January 21, 2012 special meeting were not provided an opportunity to elect a chair, and Davis-Schwartz conducted the meeting as the inspector of election. As explained by the trial court, Bullock was present at the meeting and attempted to voice his protest about the proceedings. He was also not allowed to vote the proxies he continued to hold from the July 2011 election. Section 4.7(a) of the Bylaws and Corporations Code section 7614, subdivision (a), both provide that, before a members meeting, the Board may appoint an inspector of election. Additionally, the Bylaws provide that if none is appointed, the chairman of the meeting may, and on the request of any member, appoint one. Appellants argue Glover was not authorized by any of these provisions to hire an inspector of election. The trial court explained that "[t]o give effect to and implicit in Section 7.6 [of the Bylaws] is that the members can conduct a recall election when the Board fails to act." Appellants have not cited any authority that indicates that, under

27

these circumstances, the recall can be deemed invalid based on the appointment of an inspector of election or the meeting being run by one. We similarly reject Appellants' argument that Glover's contract with the inspector of election is void for violating public policy because it was not made with the Board.**9** Given that the recall was being conducted because the Board refused to Act, we see no basis for nullifying the results merely because the members attempted to find a neutral party to conduct the election.

Appellants have also failed to persuade us the trial court erred in concluding Davis-Schwartz was not required to consider proxies. (See Bylaws § 4.4(a).) In the context of discussing shares with multiple owners, the Bylaws state that if no notification of the owner designated by his or her co-owners as having the sole right to vote the membership is received, "the Secretary may accept the vote of any single multiple Owner of Record, by proxy *or* by ballot at the meeting, as the vote attributable to the Share in question." (Bylaws § 3.3, italics added.) Here, members were mailed ballots. Appellants point to no provisions that required the acceptance of proxies at the special meeting as well. Additionally, the trial court found, "There was . . . no evidence that if the proxies had been considered the results of the recall would have been different." Appellants have failed to refute that statement. As such, this argument furnishes no basis to declare the results of the election invalid.

Appellants argue Davis-Schwartz failed to fulfill her duties because she did not determine the number of memberships outstanding and the voting power of each. (Bylaws § 4.7(b).) The record, however, reflects that Davis-Schwartz did make the required determination. The Bylaws do not specify how this determination is to be made.

---

**9** The Election Services Agreement states it was negotiated outside the Owners' Association's authority and permission.

### 11. *Fairness*

Appellants argue the recall was void for lack of fairness. The trial court rejected this argument as unsupported by the evidence, explaining, "The subject directors all knew about the recall petitions and the member drive recall process. They chose to ignore it even after receiving the newsletters from the recall effort that were being sent to all members. There is no evidence that recall signatures were coerced. There was no evidence that any member/owner who voted was deceived by any of the recall materials or allegations contained therein. As any board, the recalled board had its own forum, R-Ranch Roundup, in which to highlight its accomplishments and policies." Substantial evidence supports the trial court's findings. There is evidence to support the finding that the directors were served with the recall petitions. This gave them notice of the recall in advance of the ballots being sent. They also had notice of the meeting which was conducted by a third-party inspector of election. Appellants have failed to demonstrate the election results should be voided for lack of fairness.

### 12. *Appointment of Replacement Directors*

Appellants argue the Replacement Directors were not validly appointed. We disagree. Section 7.6(f) of the Bylaws provides that "[v]acancies on the Board of Directors shall be filled by a majority vote of the remaining directors though less than a quorum, or by a sole remaining director unless the vacancy is created through removal of a director for cause." While the petitions stated reasons for wanting each targeted director removed, Appellants have not established they were removed for "cause." As such, the appointment of replacement directors by the remaining remembers of the Board was proper.

### F. *Motions for Judgment on the Pleading*

### 1. *Effect of Earlier Appeal*

As set forth above, on October 11, 2017, the trial court granted the Owners' Association's and the Replacement Directors' motions for judgment on the pleadings.

29

Appellants argue the trial court lacked jurisdiction to grant these motions due to the pendency of their appeal in *R-Ranch Property Owners' Association v. Bullock* (case No. C078598) because there should have been an automatic stay. That appeal was dismissed by order of this court on October 13, 2017.

Appellants argument is based on Code of Civil Procedure section 916, subdivision (a), which provides, unless certain exceptions apply, "the perfecting of an appeal stays proceedings in the trial court upon the judgment or order appealed from or upon the matters embraced therein or affected thereby, including enforcement of the judgment or order, but the trial court may proceed upon any other matter embraced in the action and not affected by the judgment or order." " '[W]hether a matter is "embraced" in or "affected" by a judgment [or order] within the meaning of [Code of Civil Procedure section 916] depends on whether postjudgment [or postorder] proceedings on the matter would have any effect on the "effectiveness" of the appeal,' " and "a proceeding affects the effectiveness of the appeal if the very purpose of the appeal is to avoid the need for that proceeding." (*Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 189, 190.) "[A]n appeal does not stay proceedings on 'ancillary or collateral matters which do not affect the judgment [or order] on appeal' even though the proceedings may render the appeal moot." (*Id.* at p. 191.) "A postjudgment or postorder proceeding is . . . ancillary or collateral to the appeal despite its potential effect on the appeal, if the proceeding could or would have occurred regardless of the outcome of the appeal." (*Ibid.*) Our order dismissing the earlier appeal explains that the appeal was from an order on ancillary and collateral matters arising out of the withdrawal of Goguen's counsel. As such, no automatic stay applied.

*2. Service*

Appellants argue the trial court had no jurisdiction to grant the motions for judgment on the pleadings because Goguen was not served. Goguen filed an objection and opposition to the motion that attached a document indicating that the motion filed by

30

the Replacement Directors was served on his withdrawn counsel on July 6, 2017. Appellants cite authorities to support their assertion that this argument is not waived, but nothing that supports their underlying argument that the trial court lacked jurisdiction to grant the motions. Accordingly, we reject this claim.

### G. Challenges to Underlying Complaint

Appellants raise various challenges to the underlying complaint that we must reject because the complaint was dismissed as to them:

Appellants argue the trial court lacked subject matter jurisdiction because no Board approved the Owners' Association's complaint. Appellants also argue the trial court lacked subject matter jurisdiction because there was no prefiling alternative dispute resolution. Section 9.6(a) of the CC&Rs provide that court actions to enforce the governing documents on behalf of the Owners' Association may only be initiated upon approval of the Board. Further, the Bylaws provide that before initiating any court action seeking declaratory or injunctive relief to interpret or enforce the governing documents, the Owners' Association must comply with former Civil Code section 1354 "or comparable superseding statute, relating to alternative dispute resolution." These arguments fail because the propriety of the Owners' Association's complaint is not before us.

Appellants argue the trial court lacked subject matter jurisdiction because counsel for the Owners' Association lacked authority to sue a current client. This argument additionally fails because, at a minimum, it presupposes that Appellants prevail on their claim that they were improperly removed from the Board, which they have not.

Appellants argue the trial court lacked subject matter jurisdiction because the Owners' Association's complaint was filed under a conflict of interest that rendered it void by public policy. Again, because the complaint was dismissed as to Appellants, its propriety is not before us. Neither is this general issue. Appellants cite nowhere that the trial court addressed this issue and no authority indicating the conflict of interest issues

31

they raise are a question of subject matter jurisdiction. This is significant because the issue they raise is a factual one and record citations do not establish that the Owners' Association's counsel ever represented individual directors.

## H.     *Award of Attorneys' Fees*

The trial court awarded $320,654 in attorneys' fees to the Owners' Association and $327,796.50 to the Replacement Directors as prevailing parties under Civil Code section 1717 and *Tract 19051 Homeowners Assn. v. Kemp* (2015) 60 Cal.4th 1135, 1138-1139 which held attorneys' fees could be awarded under former Civil Code section 1354, subdivision (c) (now section 5975)[10] of the Act to defendants who prevailed on an action to enforce the governing documents of a common interest development on the basis that the plaintiffs failed to prove the housing development satisfied the requirements of a common interest development under the Act. The trial court further noted the award was also pursuant to section 9.2 of the CC&Rs. Appellants raise various challenges to this award.

" ' "On review of an award of attorney fees after trial, the normal standard of review is abuse of discretion. However, de novo review of such a trial court order is warranted where the determination of whether the criteria for an award of attorney fees

---

[10]  Civil Code section 5975 (former Civil Code section 1354) provides:

"(a) The covenants and restrictions in the declaration shall be enforceable equitable servitudes, unless unreasonable, and shall inure to the benefit of and bind all owners of separate interests in the development. Unless the declaration states otherwise, these servitudes may be enforced by any owner of a separate interest or by the association, or by both.

"(b) A governing document other than the declaration may be enforced by the association against an owner of a separate interest or by an owner of a separate interest against the association.

"(c) In an action to enforce the governing documents, the prevailing party shall be awarded reasonable attorney's fees and costs."

32

and costs in this context have been satisfied amounts to statutory construction and a question of law." ' [Citation.] In other words, 'it is a discretionary trial court decision on the propriety or amount of statutory attorney fees to be awarded, but a determination of the legal basis for an attorney fee award is a question of law to be reviewed de novo.' " (*Mountain Air Enterprises, LLC v. Sundowner Towers, LLC* (2017) 3 Cal.5th 744, 751.)

### 1. Statutory Basis

Appellants argue the trial court erred in awarding attorneys' fees because Civil Code sections 1717 and 5975 do not apply. Because the award of attorneys' fees was proper under Civil Code section 1717, we need not address Appellants' arguments pertaining to Civil Code section 5975.

"Code of Civil Procedure section 1021 codifies the 'American rule' that each party to litigation ordinarily pays its own attorney fees. [Citation.] But [Civil Code section] 1717 provides an exception where the parties enter into an enforceable agreement authorizing an award of fees." (*Westwood Homes, Inc. v. AGCPII Villa Salerno Member, LLC* (2021) 65 Cal.App.5th 922, 926-927.) "In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs." (Civ. Code, § 1717, subd. (a).) "An action (or cause of action) is 'on a contract' for purposes of [Civil Code] section 1717 if (1) the action (or cause of action) 'involves' an agreement, in the sense that the action (or cause of action) arises out of, is based upon, or relates to an agreement by seeking to define or interpret its terms or to determine or enforce a party's rights or duties under the agreement, and (2) the agreement contains an attorney fees clause." (*Douglas E. Barnhart, Inc. v. CMC Fabricators, Inc.* (2012) 211 Cal.App.4th 230, 241-242.) CC&Rs are contracts for these purposes (*Arias v. Katella Townhouse Homeowners Assn., Inc.* (2005) 127 Cal.App.4th

33

847, 852) and section 9.2 of the applicable CC&Rs contains an attorneys' fees clause: "In any action brought because of any alleged breach or default of any Owner or other party hereto under this Declaration, the court may award to any party in any such action such attorneys' fees and other costs as the court deems just and reasonable." The CC&Rs provide that the "governing documents" include the CC&Rs and Bylaws and the governing documents are binding on all owners. Appellants' cross-complaint claimed the recall election violated the Act and the governing documents. Appellants have failed to demonstrate that Civil Code section 1717 did not authorize the attorneys' fees awarded in this action.

Appellants argue former Civil Code section 1363.09 specifically disallows attorneys' fees. We are unpersuaded. Former Civil Code section 1363.09, subdivision (a), is part of the Act and provided: "A member of an association may bring a civil action for declaratory or equitable relief for a violation of this article by an association of which he or she is a member, including, but not limited to, injunctive relief, restitution, or a combination thereof." Former Civil Code section 1363.09, subdivision (b) provided, as relevant here: "A member who prevails in a civil action to enforce his or her rights pursuant to this article shall be entitled to reasonable attorney's fees and court costs, and the court may impose a civil penalty of up to five hundred dollars ($500) for each violation . . . . A prevailing association shall not recover any costs, unless the court finds the action to be frivolous, unreasonable, or without foundation." The Owners' Association did not need to prove entitlement to attorneys' fees under this provision in order to receive an attorneys' fee award under a separate statute such as Civil Code section 1717.

### 2. *Collateral Estoppel*

Appellants argue the award of attorneys' fees is barred by collateral estoppel based on a trial court's ruling on attorney's fees in *Weber v. R-Ranch Property Owners Association, Inc.* (Superior Court of Siskiyou, case No. SCSCCVCV 08-001618). We

34

disagree. In that case, the plaintiff sought to void a recall election pursuant to former Civil Code section 1363.09. Judgment was entered in favor of the Owners' Association. The court denied a request for attorneys' fees made under former Civil Code section 1354 based on that statute's interplay with former Civil Code section 1363.09, which is part of the same Act. The trial court denied attorneys' fees to the Owners' Association because of its factual determination under former Civil Code section 1363.09, subdivision (b) that the action was not frivolous, unreasonable, or without foundation. The court did not address the potential applicability of Civil Code section 1717, which is not part of the Act, and was apparently not a basis on which the Owners' Association requested attorneys' fees. Therefore, the court's ruling in *Weber* cannot preclude the Owners' Association from establishing an entitlement to attorneys' fees under Civil Code section 1717 in this proceeding.

   3. *Request for Evidentiary Hearing*

  Appellants suggest the trial court erred in refusing their request under California Rules of Court, rule 3.1306 for an evidentiary hearing on attorneys' fees. They have cited no authority showing the trial court was required to grant this request. (See Cal. Rules of Court, rule 3.1306(a) ["Evidence received at a law and motion hearing must be by declaration or request for judicial notice without testimony or cross-examination, unless the court orders otherwise for good cause shown"].) Indeed, they have identified no authority granting a request to put on similar evidence.

   4. *Amount Awarded*

  Appellants argue the amount awarded to the Owners' Association and the Replacement Directors was excessive but cite mainly their own opposition briefs and not any papers supporting the requests for attorneys' fees. This is insufficient to demonstrate error. "In challenging attorney fees as excessive because too many hours of work are claimed, it is the burden of the challenging party to point to the specific items challenged, with a sufficient argument and citations to the evidence. General arguments that fees

claimed are excessive, duplicative, or unrelated do not suffice." (*Premier Medical Management Systems, Inc. v. California Ins. Guarantee Assn*. (2008) 163 Cal.App.4th 550, 564.) We will address only Appellants' arguments that cited to a particular charge for which the Owners' Association sought reimbursement.

First, Appellants argue the Owners' Association's request should have been reduced by $942.50 for three "unnecessary 2.9-hour asset searches." The cited page indicates counsel performed a public records search and reviewed this information in response to a motion to force use of a settled statement due to inability to pay. Appellants conclusory statement has failed to demonstrate that this work was unnecessary or otherwise not a proper subject for reimbursement.

Second, Appellants argue the Owners' Association's attorneys' fees should have been reduced by $7,924.50 for time that was not charged. The cited pages show three entries indicating $6,796.50 in total time was not charged. However, the record demonstrates that while the Owners' Association initially requested $329,473.50 in attorneys' fees, it reduced its request by $6,819.50 to $322,654 after conceding these charges were not billed. The trial court awarded $320,654 in attorneys' fees to the Owner's Association based on this reduced request. As such, Appellants have failed to demonstrate any uncharged time requires any reduction of the attorneys' fee awards.

I.     *Withdrawal of Counsel*

Appellants raise various complaints related to the withdrawal of Timothy Stearns as Goguen's counsel. In November 2014, Stearns submitted a motion to be relieved as counsel pursuant to Code of Civil Procedure section 284(2) and California Rules of Court, rule 3.1362. Code of Civil Procedure section 284(2) provides: "The attorney in an action or special proceeding may be changed at any time before or after judgment or final determination, as follows: [¶] . . . [¶] 2. Upon the order of the court, upon the application of either client or attorney, after notice from one to the other." The motion states that after the legal services for which Stearns was hired were complete, Stearns told

36

Goguen as much, and Goguen came to Stearns' office and picked up all of the files. Stearns then initiated a lawsuit against Goguen to collect the fees and costs he was owed under their contract. Stearns stated that "for the first time in over one year – and in defense to my collection lawsuit, *Stearns v. Goguen et al.*, Mr. Goguen claims that I still represent him in [this lawsuit]. Therefore, out of an abundance of caution, I am filing the motion for a court order to be relieved as counsel." The motion included a proof of service showing service on Goguen only. The court heard from Goguen and Stearns and granted the motion explaining, "It appears to be and I find credible that the . . . contract for services has been performed. That an additional ground is a breach of the agreement to pay fees and the cost." The court also found that due to their appearance and filing of an opposition, the parties waived service of the motion.[11] (See *Tate v. Superior Court* (1975) 45 Cal.App.3d 925, 930 ["party who appears and contests a motion in the court below cannot object on appeal . . . that he had no notice of the motion or that the notice was insufficient or defective"].) The order further explains: "After discussion with the parties, the Court has reviewed the documents under seal and orders protection only as to page 9, line 23 and page 10, lines 24 through 26. Further the Court represents it will photocopy the . . . pages and redact the sealed portion and the document will then be filed . . . and the filed document will not remain under seal."

Appellants assert Stearns failed to give the requisite notice to Goguen that he wanted to withdraw or document this notice, but the motion demonstrates that Goguen had notice. The notice of motion and motion are on the required Judicial Council form,

---

[11] "It is settled that ' " '[c]onflicts and even testimony [that] is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends.' " ' [Citations.] We thus disregard all contentions challenging the trial court's credibility determinations as insufficient to support reversal of the order." (*Lake Lindero Homeowners Assn., Inc. v. Barone, supra*, 89 Cal.App.5th at p. 838, fn. 2, emphasis omitted.)

37

but the Declaration of Stearns is not on the required form and a proposed order was not prepared using the required form. (See Cal. Rules of Court, rule 3.1362.) Nonetheless, Appellants do not cite any authority that demonstrates that the failure to use these forms is a basis for reversal of the court's order. Here, given the peculiar nature of the request, we cannot conclude that it is. At a minimum, we can discern no prejudice. Stearns was apparently not representing Goguen at the time he filed his motion "out of an abundance of caution." Goguen himself filed a substitution of attorney on August 13, 2013, indicating he had been representing himself but was now being represented by Rebecca Moore. The record reflects he filed documents in the trial court in pro per starting in June 2013. This court in *Stearns v. Goguen* (Feb. 25, 2022, C083948) [nonpub. opn.] affirmed the judgment against Goguen in Stearns's action. We explained: "Defendants claim that plaintiff's actions in [*R-Ranch Property Owners' Assn. v.*] *Bullock* and his withdrawal as counsel in that matter violated the Rules of Professional Conduct, fiduciary duties, and Goguen's due process rights, all of which in turn voided the attorney fee contract. Many of the same allegations appear in defendants' cross-complaint. [¶] As a result of the discovery sanctions and the order deeming all requests for admission to be true, defendants did not present evidence for these contentions to the trial court. We will not entertain these factual allegations in the first instance. Relatedly, defendants' request for judicial notice and motion for sanctions are denied." (*Ibid*.) Appellants have failed to demonstrate any error in the trial court's rulings or that they may relitigate the question of the propriety of Stearns' withdrawal in this proceeding.

*J.     Request for Injunction and Stay of Proceedings*

Goguen filed a motion for preliminary injunction and stay of proceedings that sought to enjoin Stearns and prevent him from litigating *Stearns v. Goguen*. The trial court rejected the motion on the grounds that Stearns is not a party to these proceedings. The authorities cited by Appellants on appeal fail to establish any error in the trial court's reasoning.

## III.  DISPOSITION

The judgment is affirmed.  Respondents shall recover their costs on appeal.  (Cal.
Rules of Court, rule 8.278(a)(1) & (2).)


/S/

_____

RENNER, J.


We concur:


/S/

_____

DUARTE, Acting P. J.


/S/

_____

BOULWARE EURIE, J.